UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOE BRISCOE DRENNON | ) | |
| | ) | |
| v. | ) | No. 3:12-0924 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court is a Motion Under § 2255 To Vacate, Set Aside, Or Correct Sentence (Docket No. 1), filed by the Movant/Petitioner (hereinafter "Petitioner"), along with a brief in support of the Motion (Docket No. 2). The Government has filed a Response to the Motion. (Docket No. 18).

For the reasons set forth herein, the Court concludes that Petitioner's Motion To Vacate is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1), and 924. (Indictment (Docket No. 1 in Case No. 3:10-00189)). Prior to the scheduled trial date, counsel for the Petitioner, Dumaka Shabazz, filed a Motion To Suppress Evidence and a Motion To Suppress Statements (Docket Nos. 17, 20 in Case No. 3:10-00189) on behalf of the Petitioner. At the hearing scheduled to consider the motions, Mr. Shabazz moved to strike the motions because the parties had reached a plea agreement. (Docket Nos. 23, 24, 47 in Case No. 3:10-00189). The Court granted the motion to strike and scheduled a hearing to consider the change of plea. (Id.)

At the change of plea hearing, the Petitioner pled guilty pursuant to a Plea Agreement based, in part, on Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in which the parties agreed to a sentence of 100 months of imprisonment to be served concurrently with his state sentence. (Docket Nos. 25, 27, 48 in Case No. 3:10-00189). Some three months later, the Petitioner moved to withdraw the Plea Agreement. (Docket No. 28 in Case No. 3:10-00189). At the hearing to consider the motion to withdraw, the Court determined that the Petitioner had not presented a fair and just reason to withdraw from the Plea Agreement, and denied the motion. (Docket Nos. 31, 33, 40 in Case No. 3:10-00189).

Prior to sentencing, the Petitioner requested appointment of new counsel and the Court granted the request. (Docket Nos. 37, 38 in Case No. 3:10-00189). Jonathan Farmer subsequently entered a Notice of Appearance as counsel of record for the Petitioner. (Docket No. 39 in Case No. 3:10-00189). At the sentencing hearing, by agreement of the parties, the Court sentenced the Petitioner to 81 months of imprisonment, rather than 100 months, to account for the time Petitioner had spent in custody that would not be credited to him by the Bureau of Prisons. (Docket Nos. 45, 46 in Case No. 3:10-00189).

### III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to

have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. "'To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005)(quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255(b); Amr v. United States, 280 F. App'x 480, 485, 2008 WL 2246367 (6th Cir. June 2, 2008); Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The Court has reviewed the pleadings, briefs, transcripts, and records filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, transcripts, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

Petitioner argues that he received the ineffective assistance of trial counsel in the underlying criminal proceeding. In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985); Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.

4

2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

Petitioner alleges that Mr. Shabazz was ineffective for withdrawing the motion to suppress evidence in the underlying criminal case. Petitioner argues that the motion to suppress would have been successful because officers violated the Fourth Amendment when they entered his garage and found contraband and firearms without a search warrant. Had counsel proceeded with the motion, the Petitioner contends, the Court would have excluded the evidence and ultimately dismissed the charge against him. Petitioner alleges that Mr. Farmer was ineffective for failing to comply with his request to re-file the motion to suppress, and for failing to object to certain enhancements at sentencing.

Essentially, the Petitioner is arguing that counsel was deficient for advising him to enter into the Plea Agreement rather than proceeding with the suppression motion. The record indicates, however that advising the Petitioner to enter into the Plea Agreement, which contemplated a 100-month sentence, was a reasonable, tactical decision. As determined at sentencing, the Petitioner's advisory guideline range was initially 120 to 150 months, though the maximum sentence under 18 U.S.C. § 924(a)(2) of 120 months became the guidelines sentence. U.S.S.G. § 5G1.1(a). (Docket No. 46 in Case No. 3:10-00189). As a result of Mr. Shabazz's efforts, Petitioner was able to secure an agreed sentence that was almost two years less than that. Success on the motion to suppress, on the other hand, was by no means assured. Petitioner principally argues that the police entered his shop or outbuilding without his consent. That assertion would not have gone unchallenged by the officers involved, however, as the statement

5

of facts at the change of plea hearing make clear. (Docket No. 48, at 16-17, in Case No. 3:10-00189). Thus, it was not unreasonable for counsel to determine that accepting an agreed sentence of 100 months was more advantageous to his client than risking the loss of a motion to suppress and the imposition of a higher guidelines sentence.

Moreover, the Petitioner's decision to follow counsel's advice was fully-informed, knowing, and voluntary, as demonstrated by the record of the change of plea hearing. At the outset of the hearing, the Court explained to the Petitioner that he was answering questions under oath, and that he could be prosecuted for perjury or false statement for failing to tell the truth. (Transcript of Change of Plea Hearing, at 4 (Docket No. 48 in Case No. 3:10-00189)). The Court then summarized the elements of the offense to which the Petitioner was offering to plead guilty, and asked the Petitioner if he understood the nature, meaning and cause of the charge, to which the Petitioner answered: "Yes sir, I do." (Id., at 4-5). The Court then asked the Petitioner if he had talked with his attorney, Mr. Shabazz, about the charge, the facts upon which the charge is based, and any possible defenses. (Id., at 5-6). The Petitioner answered affirmatively. (Id.) The Court asked the Petitioner if he was satisfied with his lawyer, and the Petitioner responded: "Yes, sir, I am." (Id., at 6).

The Court then advised the Petitioner as to the maximum possible penalty for the charge to which he was pleading – 10 years imprisonment and up to three years of supervised release. (Id., at 6). The Petitioner said that he understood. (Id.) The Court then explained supervised release, restitution, loss of voting rights, and sentencing procedures. (Id., at 6-7). The Court specifically explained that through the Plea Agreement, the parties had agreed to a 100-month sentence, and that the Petitioner would not be able to withdraw his guilty plea if he changed his

mind once the Court accepted the guilty plea and Plea agreement. (Id., at 7). The Petitioner said that he understood. (Id., at 7). The Court then explained the effect a guilty plea would have on probation in another case, the Petitioner's rights, and the rights he would be waiving by pleading guilty. (Id., at 8-9). The Petitioner said that he understood. (Id., at 9).

The Court then went through the Plea Agreement, paragraph by paragraph. (Id., at 9-13). In explaining the provisions of the Plea Agreement, the Court again advised the Petitioner that he would be agreeing to a 100-month sentence. (Id., at 11). The Court then asked the Petitioner:

> Mr. Drennon, do you feel like you understand your plea agreement?
>
> A. Yes, sir.
>
> Q. Any questions for me about it?
>
> A. I just think it is steep, but I have no questions.
>
> Q. Regrettably, federal sentencing is steep. But I want to make sure you understand what you have been charged with and what you have agreed to in your plea agreement. Do you feel like you understand those things?
>
> A. Yes, sir, I do.
>
> Q. Has anybody forced you to plead guilty?
>
> A. No, sir. Just didn't want to see the alternative.
>
> Q. Has anybody promised you anything to entice you or encourage you to plead guilty other than what is in the plea agreement?
>
> A. No, sir.
>
> Q. Have you had any drugs or alcohol in the last 12 hours?
>
> A. No, sir.
>
> Q. Are you taking any prescription medications?
>
> A. Yes.

Q. What are you taking medication for?

A. Anxiety.

Q. When you take those anxiety medications, does it affect your ability to think clearly?

A. No, sir.

Q. Are you having any trouble understanding me?

A. No, sir.

Q. Do you need me to clarify anything?

A. No, sir.

Q. Do you feel like your mind is clear and you know what your are doing?

A. Yes, sir.

Q. Do you have any questions for me about anything.

A. I don't think so.

(Id., at 13-14).

The Court then called on the Government to establish a factual basis for the plea, and the Government called Special Agent John Harrell to recite the facts underlying the guilty plea. (Id., at 15-20). After the witness testified, the Court recalled the Petitioner and counsel to the podium, and asked if the Petitioner had any questions. (Id., at 20-23). The Petitioner stated: "Only thing I had to say about that was I didn't invite the police into my shop. They came in without me inviting them in." (Id., at 23). In its response, the Court addressed the withdrawn motion to suppress:

> THE COURT: Well, Mr. Shabazz, you have previously withdrawn your motion to suppress, and so I can't adjudicate that at this point. Of course, I am sure the government has certain facts it would rely on, and you would have some additional facts. So from Mr. Drennon's statement, I can't conclude that there

8

was an illegal search. I just want to make sure both of you understand that and that if you plead guilty, Mr. Drennon, then you can't pursue that search issue any further. By pleading guilty, that would lay that to rest, and I want to make sure you understand that.

THE DEFENDANT: Yes, sir, I understand that.

THE COURT: Do you understand that? Okay. All right. Well, then we'll keep pressing on.
   I asked you to listen to what the agent said about your conduct. There was a lengthy statement of facts. A lot of it dealt with some other people. But as to what the agent said about what you did, what you said and what you possessed, was his statement correct?

THE DEFENDANT: About the firearms, yes, sir.

THE COURT: Are you offering to plead guilty because you are in fact guilty as charged in the indictment?

THE DEFENDANT: Yes, sir, I am.

(Id., at 23-24). The Court then determined that the Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily. (Id., at 24-25).

At the subsequent hearing on the Petitioner's motion to withdraw the Plea Agreement, the Court found that the Petitioner had not shown a fair and just reason to withdraw, and that he had simply changed his mind: "He assessed the risk, and he agreed to it eyes wide open, and now he is simply trying to change his mind." (Docket No. 40, at 19 in Case No. 3:10-00189). Petitioner's claims regarding Mr. Shabazz are without merit.

As for the Petitioner's complaint about Mr. Farmer, the Court concludes that it was not unreasonable for counsel to decline to move yet again to withdraw the Petitioner's guilty plea and re-file the motion to suppress in light of the Court's earlier rejection of Petitioner's attempt to withdraw. Mr. Farmer's efforts at sentencing, which resulted in a 19-month reduction from the agreed sentence, were much more advantageous to the Petitioner than the course of action

9

suggested by the Petitioner.

Petitioner also argues that Mr. Farmer was ineffective for failing to object to certain enhancements in the Pre-Sentence Investigation Report. Given that the Petitioner had agreed to a 100-month sentence in the Plea Agreement, such objections likely would have been considered a breach of the Plea Agreement. Counsel was not deficient for declining to take such a course of action. Counsel's efforts were better directed to obtaining the 19-month reduction from the agreed sentence. Petitioner's claims regarding Mr. Farmer are without merit.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. Castro v. United States, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

                                                  TODD J. CAMPBELL
                                                  UNITED STATES DISTRICT JUDGE